# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ann C. Williams | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 96 CR 815 - 1,3,4,6,7 | DATE | 11/28/2000 |
| CASE TITLE | UNITED STATES OF AMERICA vs. JACKSON, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to the court's memorandum opinion and order the court denies defendants' motions for judgment of acquittal or for a new trial in light of recent Supreme Court precedent. The court will issue separate orders concerning each defendant's sentencing motions.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |

number of notices

NOV 28 2000 — date docketed

docketing deputy initials

Document Number: 678

ED-7
FILED FOR DOCKETING
00 NOV 28 PM 12: 29

| DL | courtroom deputy's initials |

Date/time received in central Clerk's Office

date mailed notice
mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 96 CR 815 |
| EDWARD LEE JACKSON, JR., M. L. MOORE, ALEX D. RAMOS, CORNELIUS TRIPP, JAMES P. YOUNG, | ) | DOCKETED NOV 2 8 2000 |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are various submissions concerning the conviction of five defendants, Edward Jackson, Alex Ramos, Cornelius Tripp, M.L. Moore, and James P. Young, who were all found guilty of one or more counts of extortion and racketeering activity in violation of 18 U.S.C. §§ 1951 ("Hobbs Act"), 1962(c) and (d) ("RICO").

## Background

Each of the defendants are former Chicago Police Department officers who misused their position as police officers for personal gain and

profit. Specifically, defendants robbed and extorted money, property, and narcotics from individuals who were or who the defendants understood to be drug dealers; received cash payments from drug dealers in exchange for protecting drug operations; conspired with others to identify individuals from whom the defendants could rob and extort money and drugs; and threatened to falsely arrest and to plant drugs and guns on individuals unless they received money, drugs and/or property. In addition, as a part of their scheme, defendants assisted drug dealers and suspected drug dealers by providing them with confidential information and prepared false search warrants and other official documentation for the purpose of robbing and extorting money and drugs from drug dealers.

Defendants Jackson, Ramos, Moore, and Young were found guilty after a jury trial, while Defendant Tripp pled guilty to participating in a racketeering conspiracy and unlawful use of a firearm during and in relation to a crime of violence or a drug trafficking crime under 18 U.S.C. § 924(c). All of the defendants, except Defendant Moore, now challenge their convictions and seek to dismiss the indictment for lack of subject matter jurisdiction. In sum, defendants argue that in light of the holdings in recent Supreme Court cases, *United States v. Morrison*, -- U.S. --, 120 S.

Ct. 1740 (2000) and *United States v. Jones*, -- U.S. --, 120 S.Ct. 1904 (2000), the government failed to provide sufficient facts to support to show that defendants' activity had a substantial effect on interstate commerce and that the jury instructions given to the jury contained an incorrect statement of the law. As such, Defendants seek a judgment of acquittal, reversal of their Hobbs Act convictions or, alternatively, a new trial.[1]

## Analysis

### I. Jurisdictional Element

Defendants urge the court to dismiss various counts contained in the superceding indictment for lack of subject matter jurisdiction.[2] A party may challenge the court's jurisdiction at any time, even, as is the case here, after a defendant has been convicted. However, the government correctly notes that failure to prove an interstate commerce connection does not deprive the district court of federal subject matter jurisdiction such that the indictment would have to be dismissed. Although interstate commerce is

---

[1] Defendants have also submitted various alternative motions pertaining to sentencing. The court will address the interstate commerce issue and Defendants' motion for new trial in this consolidated opinion, but will address each defendants' sentencing issues in separate orders.

[2] Defendant Jackson seeks to dismiss Counts xxxxx, Defendant Ramos seeks to dismiss Counts xx and xx, Defendant Young seeks to dismiss Counts 5 and 6, and Defendant Tripp seeks to dismiss Count xx.

considered a jurisdictional element, it is not jurisdictional to the extent that it would impact the court's jurisdiction to hear this matter. *See Hugi v. United States*, 164 F.3d 378, 380-81 (7th Cir. 1999). Therefore, the court will proceed to Defendants' charge that the government's failure to prove an interstate commerce connection results in failure to prove all elements of extortion beyond a reasonable doubt as required for conviction.

It is well-founded that every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution. Here, Defendants were convicted under the Hobbs Act, 18 U.S.C. §1951, and under RICO, 18 U.S.C. § 1962(c) and (d). Congressional authority to regulate activity under these provisions is provided by the Constitution's Commerce Clause, U.S. Const. art. I, § 8, and is based upon the notion that the activity in some way involves interstate commerce. The scope of the interstate commerce power

> must be considered in light our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectively obliterate the distinction between what is national and what is local. . . .

*NLRB v. Jones & McLaughlin Steel Corp.*, 301 U.S. 1, 37 (1937).

With these principles in mind, in *United States v. Lopez*, 514 U.S. 549,

558 (1995), the Supreme Court identified three categories of activity that Congress may regulate under its commerce power. The three broad categories of activity that Congress may regulate under its commerce power are: (1) regulation of the use of the channels of interstate commerce; (2) regulation and protection of the instrumentalities of interstate commerce, even though the threat may come only from intrastate activities; and (3) regulation of those activities having a substantial relation to interstate commerce or that substantially affect interstate commerce. *Lopez*, 514 U.S. at 558-59. Of particular importance in the instant case is the third category. For it is this third category under which congressional authority to enact the Hobbs Act is provided.

While what "substantially affects interstate commerce" has been interpreted expansively in the past, in recent years, the Court has made clear that Congress' commerce powers are not without limit. In *Lopez*, the Court held that *The Gun-Free School Zones Act of 1990*, 18 U.S.C. § 922(q)(1)(A), which made it a federal crime to knowingly possess a firearm in a school zone, exceeded Congress' authority under the Commerce Clause. Applying each category to § 922(q)(1)(A), the court ultimately concluded that gun possession near schools is a non-economic activity

that does not have a substantial or any other effect on interstate commerce. Further clarifying the reach of the Commerce Clause, the Court announced a new interpretation with *United States v. Morrison*, -- U.S. --, 120 S. Ct. 1740 (2000) and *United States v. Jones*, -- U.S. --, 120 S.Ct. 1904 (2000). It is now clear that Congress may not regulate non-economic, violent, criminal conduct based solely on the conduct's aggregate effect on interstate commerce.

Defendants believe that the Court's pronouncements in *Lopez, Morrison*, and *Jones* means that the government's presentation of a *de minimis* effect on interstate commerce amounts to a failure to show that Defendants' activity, extortion and attempted extortion, had a substantial effect on interstate commerce. Therefore, according to Defendants, the government failed to charge in the indictment and failed to present evidence at trial showing that the jurisdictional element of 18 U.S.C. § 1951 and § 1962 has been met. In light of recent Seventh Circuit interpretations of *Morrison* and *Jones*, however, the court finds this argument unpersuasive.

The instant case is distinguishable from *Lopez, Jones* and *Morrison* in a few important ways. The Seventh Circuit has recognized that in both

*Jones* and *Morrison*, the Supreme Court found that the statutes involved did not contain an express jurisdictional element limiting the provision's reach to only those cases having a clear connection with or effect on interstate commerce. *See United States v. Taylor*, No. 99-2608, 2000 WL 1176616 at *4 (7th Cir. Aug. 21, 2000) (holding that federal carjacking statute does address substantial effect of carjackings on interstate commerce and does not exceed congressional authority under the Commerce Clause). In contrast, the language of the Hobbs Act and 18 U.S.C. § 1962(c)(d) expressly incorporates interstate commerce as a jurisdictional element.

Defendants rightly point out that in *Jones*, the Court made clear that even for those statutes that include affect on interstate commerce as an element of the crime, Congress' power under the Commerce Clause is not without limit. Therefore, a statute does not fall within Congress' Commerce Clause authority simply because Congress says it does. In order for Congress to exercise its power under the Commerce Clause, there still must be some link to interstate commerce.

The activity at issue in *Morrison* and *Jones* differs from Defendants' activity in this case. In *Morrison*, 120 S. Ct. at 1740, the Supreme Court

rejected the notion that a but-for causal chain from the initial occurrence of violent crime to every attenuated effect upon interstate commerce could serve as the basis for federal subject matter jurisdiction. *See Morrison*, 120 S.Ct. at 1744. "If accepted, this reasoning would allow Congress to regulate any crime whose nationwide, aggregated impact has substantial effects on employment, production, transit, or consumption." *Id.* Petitioners in *Morrison* challenged congressional authority to enact the civil remedy provision of the *Violence Against Women Act*, which was a criminal statute aimed at preventing violence and which had nothing, on its face, to do with commerce and any economic enterprise. *Morrison*, 120 S.Ct. at 1750.

In *Jones,* the issue involved whether a statute making it a federal crime to commit arson of "any building used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" applied to an owner-occupied residence. *Jones*, 120 S.Ct. at 1907-8. The Court held that "to read § 844(i) as encompassing the arson of an owner-occupied private home would effect [a change in the federal-state balance], for arson is a paradigmatic common-law state crime." *Jones*, 120 S.Ct. at 1912.

There is a very basic, yet very significant difference between the activity regulated by statute in *Morrison and Jones* and the activity being regulated in this case under 18 U.S.C. §§ 1951 and 1962. As the Court noted, the fact that in the *Violence Against Women Act* and the application of 18 U.S.C. 844(i) to a private residence, the government sought to regulate a non-economic activity that, by its terms, had nothing to do with commerce. The activity being regulated was not related to some economic enterprise, but was instead activity that is traditionally left to the states to regulate as an exercise of police power.

Here, Defendants were charged and convicted with extortion[3], attempted extortion and racketeering. The Hobbs Act makes it a crime to obstruct, delay, or affect "commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commit or threaten physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." *See* 18 U.S.C. § 1951. Likewise under RICO, it is unlawful "for any person employed by or associated with any enterprise engaged in, or

---

[3] Extortion is defined in 18 U.S.C. § 1951(b) as "the obtaining of property from another with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right."

the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).[4]

Specifically, defendants conspired together and with others to "conduct the affairs of the Chicago Police Department through a pattern of racketeering activity." In this conspiracy, defendants (1) escorted and protected the shipment of cocaine; or (2) promised not to arrest or prosecute certain known and suspected drug offenders in return for drugs, drug money and other valuable property. This activity is economic in nature and does affect interstate commerce in a substantial way.

Even under *Morrison* and *Jones*, the fact that Defendants' conduct was illegal or criminal in nature does take it outside the reach of Congress' commerce power. The Seventh Circuit opinion in *United States v. Taylor*, No. 99-2608, 2000 WL 1176616 at *4 (7th Cir. Aug. 21, 2000), which was written after *Morrison* and *Jones*, is instructive. In *Taylor*, the court upheld the constitutionality of a federal carjacking statute, 18 U.S.C. § 2119. The court found that "carjacking bears a substantial relationship to interstate

---

[4] Under 18 U.S.C. § 1962(d), "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section [1962]."

commerce and poses a threat that Congress was authorized to address under the Commerce Clause." *Taylor*, 2000 WL 1176616 at *4.

Congress enacted § 2119 in response to what it considered the "nation's number one property crime problem." H. Rep. No. 102-851(1), at 14 (1992) (reprinted in 1992 U.S.S.C.A.N. 2829, 2830). "Congress struck at the burgeoning interstate trade in stolen vehicles and parts expropriated through car thefts and carjackings–activity that is economic and commercial in nature, albeit criminal as well." *Taylor*, 2000 WL 1176616 at *5. As in *Taylor*, the fact that the activity Congress reaches with the Hobbs Act in this case is criminal does not negate the fact that it is economic and commercial in nature as well. The activity at issue in this case bears a closer resemblance to the activity being regulated in *Taylor* than to the activity addressed in *Lopez, Morrison,* and *Jones*.

The strongest evidence that *Morrison* and *Jones* are inapposite can be found in *United States v. Bailey*, No. 99-2933,-- F.3d --, 2000 WL 1281332 (7th Cir. Sept. 12, 2000). In *Bailey*, the defendant brought a challenge to his conviction under the Hobbs Act that is similar to the one Defendants now bring. Bailey, a cadet with a park district police department, was caught, along with other police officers, attempting to rob

an undercover FBI agent whom he thought was a drug dealer. Like Defendants, Bailey also charged that the government had failed to prove the jurisdictional prerequisites required to prosecute him. Despite the holdings in *Morrison and Jones*, the *Bailey* court noted that because the Supreme Court has interpreted the jurisdiction under § 1851 to be coextensive with the Commerce Clause, only a *de minimis* showing or otherwise slight effect on interstate commerce is necessary. *See Bailey*, 2000 WL 1281332 at *6.

In its prosecution of Bailey, the government used the "depletion of assets theory" to show effect on interstate commerce. Under this theory, the government has shown effect on interstate commerce "when an enterprise, which either is actively engaged in interstate commerce or customarily purchases items in interstate commerce, has its assets depleted through extortion, thereby curtailing the victim's potential as a purchaser of goods." *Bailey*, 2000 WL 1281332, at *7 (citing *United States v. Elders*, 569 F.2d 1020, 1025 (7th Cir. 1978)). In the instant case, the government appears to have utilized the depletion of assets theory to show effect on interstate commerce as well. At trial, the government presented the Chicago Police Department (CPD) manager of accounts payable and

purchasing who testified that the CPD purchases bullet proof vests, ammunition, and vehicles from states outside of Illinois.

To present sufficient evidence of effect on interstate commerce under this theory means to show that Defendants had specific intent to extort money and goods and that extortion of drug dealers generally has an effect on interstate commerce. *Bailey*, 2000 WL 1281332 at *7. This court finds that the language contained in the superceding indictment was sufficient to satisfy the jurisdictional requirement and that ample evidence was presented at trial. The government presented testimony showing that each of the Defendants specifically intended to extort money, drugs and other goods from individuals they thought to be drug dealers and whom they knew would be carrying cocaine, money used for the operation of cocaine, or other valuables. As in *Bailey*, since cocaine is produced outside the United States, it enters Illinois through interstate commerce and Defendants' extortion of cocaine dealers depleted the assets available to purchase cocaine through interstate commerce. *Bailey*, 2000 WL 1281332 at *8. This, according to the court in *Bailey*, is sufficient to "creat[e] the requisite effect on interstate commerce." *Id.*

Therefore, in light of the Seventh Circuit ruling in *Bailey*, this court

finds that even under the Supreme Court rulings in *Morrison* and *Jones*, the government has presented sufficient evidence to prove that Defendants' activity had an effect on interstate commerce and that based on the evidence the jurisdictional burden has been met. The government satisfied the jurisdictional element of the Hobbs Act as well as the RICO provisions by establishing that Defendants' underlying crimes had a *de minimis* or otherwise slight effect on interstate commerce. As such, the court denies Defendants' motions for judgment of acquittal.

## II. Jury Instructions

At trial, this court gave a number of jury instructions intended to inform the jury of that effect on interstate commerce is jurisdictional element for extortion and to explain the amount of evidence needed to show an effect on interstate commerce.[5] Defendants now maintain that

---

[5] Defendants set forth Instructions Nos. 50, 50-1 and 55. In relevant part, Instruction No. 50 reads:

> the extortion would have affected, did affect, or had the potential to affect commerce. It is not necessary for you to find that the defendant knew or intended that his actions would affect commerce. What is necessary for you to find is that the natural consequences of the acts committed by the defendant charged in the indictment would affect, did affect, or potentially affected commerce in any way or degree.

-14-

because the court instructed the jury on the law prior to the Court's pronouncement in *Morrison* and *Jones*, the instructions on the interstate commerce element were incorrect and that their convictions should be set aside. The court must deny these motions as well.

In *Neder v. United States*, 527 U.S. 1 (1999), the Supreme Court held that omission from an element from the district court charge to the jury is not a structural constitutional error and therefore such an omission should be reviewed under a harmless error standard. *Neder*, 527 U.S. at 9-10. As such, unless it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," the erroneous instructions provided to the jury will not serve as a basis to set aside defendants' convictions. *Lanier v. United States*, 220 F.3d 833, 839 (7th Cir. 2000) (citing *Neder*, 524 U.S. at 10).

---

Instruction 55 reads, in pertinent part:

> the government need not show any particular degree of effect on commerce. An effect on commerce will be shown even if the actual impact on commerce is *de minimis*; or, in the absence of proof of an actual impact, if there was a realistic probability that the robbery or extortion (or attempted robbery or extortion or conspiracy) would have some effect on commerce, no matter how small. It is the potential effect on commerce at the time of the offense that is relevant, not whether there was an actual effect.
>
> The government need not prove that the defendants themselves engaged in commerce. The government need only prove that the charged offense would have affected commerce, as described above.

-15-

Again, *Bailey* speaks directly to Defendants' claims. The defendant in Bailey also objected to the instructions given for jurisdiction based on interstate commerce. He argued that after *Lopez*, the instructions laying out the depletion of assets theory no longer accurately reflected the law. The *Bailey* court rejected the defendant's argument and held that the district court had committed no error in allowing the interstate commerce instruction based on the evidence presented at trial. "The government produced evidence in support of its depletion of assets theory. . . . The theft of such money [the drug dealer's] would have depleted available assets for interstate commerce. This evidence is enough to support the . . . instruction." *Bailey*, 2000 WL 1281332 at *11. Since the *Bailey* court confirmed that even under *Morrison* and *Jones*, the government may prove the jurisdiction of its case by showing a *de minimis* or otherwise slight effect on interstate commerce, we find that the jury instructions now challenged by Defendants were not made in error.

## Conclusion

For the reasons set forth above, the court denies Defendants' motions for judgment of acquittal or for a new trial in light of recent

Supreme Court precedent. The court will issue separate orders concerning each defendant's sentencing motions.

**ENTER:**

*[signature]*

**Ann Claire Williams,
Judge**

**Dated:** **November 28, 2000**